IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ESTATE OF GARETH BENJAMIN, JOHN HARLEY, CHRISTOPHER SULLIVAN, and AUSTIN BRADY, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) ) ) CLASS AND COLLECTIVE ACTION ) |
| *Plaintiffs*, | ) CASE NO. 1:22-CV-00166-TSB ) |
| v. | ) JUDGE TIMOTHY S. BLACK ) |
| DJGN LLC, DJGN LEXINGTON, LLC, and DJGN INDY, LLC d/b/a TONY'S STEAKS & SEAFOOD | ) JURY DEMAND ) ) ) |
| *Defendants*. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT, FOR PAYMENT OF ATTORNEYS' FEES, COSTS, AND EXPENSES, AND FOR ENTRY OF JUDGMENT**

On May 3, 2023, the Court entered an Order Granting Rule 23 Class Certification for Settlement Purposes; Preliminarily Approving Rule 23 Class Action Settlement; and Approving Settlement of FLSA Claims (the "Preliminary Approval Order") in this case. (Doc. No. 44).[1] Pursuant to that Order, notice of this settlement was sent to all members of the preliminarily certified Rule 23 Classes. *Id.* at ¶ 1. There were no objections and no exclusions. *See* Declaration of Dana Boub ("Boub Decl.") ¶¶ 12-13. This case had excellent Class Member participation, with a total of 131 of 173 Rule 23 Class members (*i.e.*, 76%) claiming approximately 88% of the settlement funds. *Id.* ¶¶ 14-15.

Plaintiffs now move this Court for an order granting final approval of the Rule 23 Class Action Settlement; approving the payment of attorneys' fees, costs, and expenses, as well as

---

[1] The Court has already approved the Parties' FLSA Settlement, which is not discussed here. Order, ¶ 14 (Doc. No. 44).

payment of the costs of settlement administration; and entering final judgment.

**I. BACKGROUND**

**A. Prior Proceedings and Background**

In briefing the preliminary approval of this action, Plaintiffs have already provided this Court with a detailed account of the background facts through preliminary approval of the settlement, including: (1) identifying and explaining what claims the settlement resolves; (2) identifying and describing the classes that were preliminarily certified; (3) the scope of the claims released; (4) the monetary terms of the settlement; (5) an explanation of the settlement allocation and its relation to the Rule 23 Class members potential recovery; (6) an overview of the notice and settlement administration procedures; and (7) an account of the parties' hard-fought, arm's-length settlement negotiations. (Doc. No. 41 at PageID#: 377-84). Now, with notice complete, Plaintiffs provide the following additional facts regarding the notice process and its results.

**B. CAFA Notice**

As Plaintiffs notified the Court, the Settlement Administrator timely provided notice of the proposed class action settlement to the appropriate federal and state officials, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. (Doc. No. 42). The Settlement Administrator did not receive any responses to the CAFA notice. Boub Decl. ¶ 4.

**C. The Court-Approved Notice was the Best Notice Practicable Under the Circumstances and Satisfies Rule 23(c) and (e).**

On May 26, 2023, the Settlement Administrator under the Settlement, RG/2 Claims Administration, LLC ("RG/2"), issued the Court-approved settlement Notice and Claim Form to the Rule 23 Class members via U.S. Mail and e-mail, in accordance with this Court's May 3, 2023, Order. *See* Boub Decl. ¶¶ 6-7 and Ex. A. This notice communicated clearly and concisely all of

the aspects of the case and the settlement required under Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure to the Rule 23 Class members in plain, easily understood language. On July 25, 2023, RG/2 issued reminder notices via U.S. Mail and e-mail to Rule 23 Class members who had not yet filed a claim form. *Id.* ¶ 9. The deadline to submit claim forms, to request exclusion, or to object was September 23, 2023. *Id.* ¶¶ 11-14.

This notice and notice procedure was *effective*. A total of 43 mailed Notice Packets were returned by the United States Postal Service as undeliverable. *Id.* ¶ 10. RG/2 then performed a standard skip-trace procedure and was able to re-mail an additional 37 Notice Packets for whom an updated address was located. *Id.* After this procedure, only six (6) Notices remained undeliverable. *Id.* However, of the six (6) Notice Packages that remained undeliverable, all but two (2) of the Class Members filed a claim form. *Id.* In other words, the Court-approved Notice reached the Rule 23 Class members, and, as explained below, they overwhelmingly acted to participate in the settlement.

In short, this was the best notice practicable under the circumstances and provided all Rule 23 Class members desiring to object to the Settlement or exclude themselves with fair and adequate notice of its terms and of the Fairness Hearing scheduled for October 30, 2023.

### D. The Reaction of Absent Class Members was Overwhelmingly Positive with No Objections or Exclusions and Exceptional Participation.

There were no objections and no requests for exclusion. *Id.* ¶¶ 12-13. As importantly, 131 of 173 total Rule 23 class members have claimed a total of $796,975.55 of the estimated $910,000 settlement funds. *Id.* ¶¶ 14-15.

In other words, 76% of the Rule 23 Class members have claimed more than 88% of the available settlement funds. *Id.* Put differently, the response of the Rule 23 Class members was overwhelmingly positive.

3

## II. LAW AND ARGUMENT

### A. The Settlement is fair, reasonable, and adequate.

There is a strong federal policy encouraging settlement of class actions. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 371-72 (S.D. Ohio 2006); *see also UAW, et al. v. General Motors Corp.*, 497 F. 3d 615, 632 (6th Cir. 2007); *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979); *Airline Stewards & Stewardesses Assoc. v. American Airlines, Inc.*, 573 F.2d 960, 963 (7th Cir. 1978). "Before a district court approves a settlement, it must find that the settlement is 'fair, reasonable, and adequate.'" *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *2 (S.D. Ohio July 11, 2014) (Black, J.) (quoting *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11–cv1061, 2013 WL 2295880, at *4 (S.D. Ohio May 24, 2013); *see Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *4 (S.D. Ohio Sept. 25, 2020) (stating the same). If a court finds that the settlement is fair, reasonable, and adequate, approval of the settlement is appropriate. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 381-82.

As Plaintiffs noted in their preliminary approval briefing, the Sixth Circuit has stated the factors to be balanced when evaluating the fairness and reasonableness of a settlement: "(1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest." *Does 1-2 v. Déjà vu Services, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019) (citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). "In reviewing a proposed class action settlement, the district court has wide discretion in assessing the weight and applicability of the relevant factors." *Carr*, 2022 WL 501206, at *3-4 (citing *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018)) (internal quotations omitted); *see Granada Invs., Inc.*

*v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992) (stating the court enjoys wide discretion when weighing and applying the factors used to determine whether a settlement is fair and reasonable).

Plaintiffs provided extensive briefing and argument relating to all of these factors in their memorandum in support of preliminary approval of the settlement, with the exception of the sixth factor, the reaction of absent class members, which could only be addressed following the Court-approved notice. (Doc. No. 41 at PageID#: 392-95). Plaintiffs also briefed the allocation of settlement funds, explaining in detail how that allocation equitably distributes settlement funds to the Rule 23 Class members. (*Id.* at PageID#: 381-82, 395-96). Finally, Plaintiffs have already provided detailed briefing of the reasonableness of the service payments to the class representatives. (*Id.* at PageID#: 396-98).

Through the Court-approved notice process, the Rule 23 Class members have had an opportunity to consider the provisions of the settlement (including the payment of the preliminarily approved service payments to the class representatives, of settlement administration expenses, and of attorneys' fees, costs, and expenses) and to submit a claim, request exclusion, or object. Now, with notice complete, Plaintiffs are in a position to provide the Court with information regarding the reaction of absent class members.

"The Court must also consider the reaction of the absent class members." *Satterly*, 2020 WL 6536342, at *7 (citing *Wright*, 2018 WL 3966253 at *5). However, the fact that some class members object to a settlement does not by itself prevent a court from approving the settlement. *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991). Here, as noted above, there were <u>no</u> objections and <u>no</u> exclusions, and 131 of 173 total Rule 23 class members have claimed 88% of the available settlement funds were claimed.

5

*See* Boub Decl. ¶¶ 14-15. Thus, this factor—and overwhelmingly positive reaction to the settlement—supports approval. *See Swigart*, 2014 WL 3447947, at *4 (Black, J.) (where, of the 327 eligible FLSA opt-in Plaintiffs, all but one accepted the settlement; and of the 193 eligible class members, 152 accepted).

### B. The agreed-upon payment of Plaintiffs' attorneys' fees, costs, and expenses should be approved.

Under the terms of the parties' Settlement, Defendants will pay $1,500,000 as a common fund. *See* Settl. ¶ 2.15. The Settlement provides that Plaintiffs may petition the Court for payment of one-third (1/3) of the common settlement fund for their attorneys' fees, as well as for their costs and expenses incurred. *See id.* ¶ 4.3.3. Plaintiffs seek approval of $500,000, which is one-third (1/3) of the common fund, as payment for their attorneys' fees, and payment of $25,142.42 for their incurred costs and expenses to date.

The FLSA, as well as the state laws at issue, provide for the payment of attorneys' fees and costs to Plaintiffs who recover unpaid wages and other damages. 29 U.S.C. § 26(b); KRS 337.385 Oh. Const. Art. II, § 34a; I.C. § 22-2-5-2. Moreover, "[d]istrict courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h)." *Swigart*, 2014 WL 3447947, at *5 (citation omitted). When assessing a request for fees, the district court performs "a two-part analysis." *Id.* (citing *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007)). The court first determines whether to calculate the attorneys' fees using "either the percentage of the fund approach or the lodestar approach." *Id.* (citing *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d at 760). Then, the court analyzes and weights the so-called *Ramey* factors. *Id.* (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)).

### 1. The Court should adopt the percentage-of-the-fund method.

Here, the parties negotiated a common fund for the benefit of the Rule 23 Class members and the Court should apply the percentage-of-the-fund approach. The Sixth Circuit has left the appropriate method of calculation in the district court's discretion. *See Rawlings v. Prudential-Bache Propsl, Inc.,* 9 F.3d 513, 517 (6th Cir. 1993) ("[W]e conclude that use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases…"); *Rotuna et al. v. West Customer Management Group, LLC*, 2010 WL 2490989 at *7 (N.D. Ohio, June 15, 2010) (noting in FLSA case that "[d]istrict courts within the Sixth Circuit have the discretion to select one of two methods for calculating an award of attorneys' fees in a common fund case by using either a percentage of the fund calculation or a lodestar multiplier"). This permits courts "to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and the particular circumstances of the actual cases pending before the Court." *Swigart*, 2014 WL 3447947, at *5 (quoting *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d at 761 (internal quotation marks omitted)). The primary consideration in this Circuit is that the award "be reasonable under the circumstances." *Rawlings,* 9 F.3d at 516. The percentage of the fund method is particularly appropriate where the result achieved for the class is substantial, and class counsel undertook the representation on a contingent fee basis and advanced significant labor and expenses to litigate the case. *See Friske v. Bonnier Corporation*, 2019 WL 5265324, at *2 (E.D. Mich., Oct. 17, 2019). And, as this Court has noted, "[i]n this district, 'the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'" *Swigart*, 2014 WL 3447947, at *5. In short, the percentage-of-the-fund method is appropriate here.

### 2. The *Ramey* factors support approval of the one-third of the common fund as attorneys' fees.

The Sixth Circuit has identified six considerations that enter into the determination of reasonable fees by a court including: (1) the value of the benefit rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of all counsel. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974); *Swigart*, 2014 WL 3447947, at *5-6. Application of these factors merit approval of the fees, costs, and expenses set forth in the Parties' Settlement.

**(1) The Settlement Provides Substantial Benefits to the Class.** The value conferred on the Rule 23 Class members is considerable, both in the aggregate and individually. Plaintiffs have previously explained, in support of preliminary approval, that this settlement confers substantial benefits on Rule 23 Class members. Among other benefits, it pays a large percentage of each Rule 23 Class member's maximum potential recovery at trial, accounts for the unique features of the FLSA and each state statute, and provides an average individual recovery of more than $5,250 per Rule 23 Class member. (Doc. No. 41 at PageID#: 381-82). And, just as in *Swigart*, "the settlement provides relatively early relief to class members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue." *Swigart*, 2014 WL 3447947, at *6. And, as in *Swigart*, "[a]bsent settlement, the parties would have engaged in extensive discovery (including written discovery and multiple depositions), and contested class certification, FLSA collective decertification, and dispositive motions on merits and damages issues." *Id.* In short, the value of the benefit conferred is substantial.

**(2) Society's Interest in Rewarding Attorneys Favors Approval.** As this Court has

8

noted, "[s]ociety's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award." *Id.* (citing *Gentrup v. Renovo Servs., LLC*, No. 1:07–cv–430, 2011 WL 2532922, at *4 (S.D. Ohio, June 24, 2011). In fact, society's interest in the settlement of wage-and-hour class and collective actions more broadly supports rewarding attorneys. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *Accord, Crawford v. Lexington-Fayette Urban Cty. Gov't*, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) ("Given the uncertainty surrounding a possible trial in this matter, the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement" since "such a ruling promotes the public's interest in encouraging settlement of litigation.").

The policy favoring the settlement of collective and/or class actions applies with particular force here. "Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Daoust, et al. v. Maru Restaurant, LLC, et al.*, 2019 WL 2866490 at *2 (E.D. Mich., July 3, 2019). In short, "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup*, 2011 WL 2532922, at *4.

**(3) The Representation was Undertaken on a Contingent Fee Basis.** Plaintiffs' counsel undertook this litigation on a contingency fee basis, agreeing to front the considerable costs certain to be incurred in such a sizable FLSA and state law wage-and-hour class and collective action case. Garrison Decl. at ¶ 10. As such, Plaintiff's counsel risked receiving no reimbursement for the costs they incurred and the time expended for their services in the event counsel did not prevail.

9

*Id.* Unlike counsel who defend FLSA collective actions and who are paid regularly throughout the course of a case regardless of outcome, Plaintiffs' counsel have received no compensation for their work on behalf of the Plaintiffs and potential Plaintiffs over the course of this litigation. *Id.*[2] Just as in *Swigart*, this supports approval of the requested payment for fees. *Swigart*, 2014 WL 3447947, at *6 (citing *Gentrup*, 2011 WL 2532922, at *4).

Other courts have also consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See e.g., Willix v. Healthfirst, Inc.,* 2011 WL 754862, at *7 (E.D.N.Y. Feb 18, 2011) (finding that where class counsel took on contingency risk of non-payment, a percentage-of-recovery fee award of 33.33% was "presumptively reasonable."). Thus, the award of fees Plaintiffs seek here is entirely appropriate given the outstanding results obtained and contingent risk undertaken by Plaintiffs' counsel. *See Friske v. Bonnier Corporation*, 2019 WL 5265324, at *2 (E.D. Mich. Oct. 17, 2019) ("The percentage of the fund method is appropriate here for evaluating the reasonableness of the attorney fee since the result achieved for the class in terms of the cash payments to be made from the fund was substantial, and class counsel undertook the representation on a contingent fee basis and advanced significant labor and expenses to litigate the case. And the percentage award requested is appropriate to compensate class counsel adequately for the risk inherent in that contingent fee representation."); *Barbee v. Navihelath, Inc.*, No. 3:19-cv-00119, 2020 WL 6365515, at *1 (M.D. Tenn. Sept. 21, 2020) (awarding fees equal to 33.33% of the total settlement value).

**(4) The Value of Counsel's Services on an Hourly Basis Supports Approval.** A lodestar crosscheck is optional. *Swigart*, 2014 WL 3447947, at *6. In fact, approval of one-third

---

[2] Plaintiffs' counsel also received no compensation relating to the individually negotiated, Court-approved settlement of non-servers' claims in this action. (Doc. No. 36 at PageID#: 255, n.1).

10

(1/3) of a common fund is routine in this circuit. *See Ware v. CKF Enterprises, Inc.,* 2020 WL 2441415, at *15 (S.D. Ky., May 5, 2020) ("[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable in similar complex failure-to-pay-overtime cases."); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at *8 (S.D. Ohio, Sept. 20, 2019) (finding "33% is typical for attorney's fees in common fund, FLSA collective actions"); *Barbee v. NaviHealth Inc.*, 2020 WL 6365515 (M.D. Tenn., Sept. 21, 2020) (awarding fees equal to 33.33% of the total settlement value); *Hawkins v. Middle Tennessee Pizza, Inc.*, No. 3:21-CV-00266, 2022 WL 337197 (M.D. Tenn. Jan. 19, 2022) (approving attorneys' fees equaling one-third of each approved settlement fund, including a Collective Fund and Reserve Fund). And, this Court has noted that "[a]n award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts." *See Swigart*, 2014 WL 3447947, at *7 (noting in one case that a district court approved 52% of the total recovery as fees).

However, Plaintiffs submit that the requested fee is also reasonable under a lodestar analysis. As of October 10, 2023, Plaintiffs' counsel had incurred $303,251.50 in fees at their reasonable hourly rates approved in similar wage-and-hour class and collective action litigation. Garrison Decl. ¶¶ 4-8. This does not include significant time spent on briefing why this Court should enter a final approval order of the of this class action. The payment of $500,000 would result in approximately less than a 1.65 multiplier of Plaintiffs' counsel's lodestar. This modest multiplier is reasonable and, in fact, less than the multipliers approved in similar cases. *See, e.g.*, *Swigart*, 2014 WL 3447947, at *6 (approving 33% of common fund as fee payment where "[c]ounsel's cumulative lodestar of $512,885, compared to its requested fee of $1,320,000, yields a lodestar multiplier of 2.57, which is consistent with other risk multipliers approved in complex class actions in this Circuit") (citing *Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL

11

6676131, at *5–6 (S.D. Ohio Dec. 21, 2012), which approved a 3.06 multiplier).

**(5) This Litigation was Complex.** This litigation was incredibly complex. It involved class claims under three distinct state statutes, FLSA collective action claims, and, until their consolidation in this Court, were pending in three different federal jurisdictions and one state court. While the claims under each of the four applicable statutory regimes were similar, there were several differences that had to be and were accounted for, including, for example: differing statutes of limitations; differing non-wage damages; and differing minimum wage rates. As this Court noted in *Swigart*, "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart*, 2014 WL 3447947, at *7. This Court went on to describe this as "particularly true," where the plaintiffs brought both FLSA and Ohio state law claims. *Id.* Here, there are claims under yet another two state's laws. Thus, just as in *Swigart*, "[r]esolving the procedural issues, the merits, and damages would have been risky, costly, and time consuming." *Id.* Thus, "the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees." *Id.*

**(6) The Professional Skill and Standing of Counsel Supports Approval.** As Plaintiffs briefed in great detail in support of preliminary approval, Plaintffs' counsel have extensive experience litigating wage-and-hour class and collective actions under state and federal laws and are skilled litigators in this area. (Doc. No. 41 at PageID#: 389-90; *see also* Doc. No. 41-2 at PageID#: 405-09 (describing the background, experience, skill, and standing of Plaintiffs' counsel)). In short, the skill and standing of Plaintiffs' counsel is substantial. This factor favors approval of the requested fees.

**C. The payment of Plaintiffs' costs and expenses should be approved.**

Here, Plaintiffs' counsel have incurred costs and expenses totaling $25,142.42 for the benefit of the Rule 23 Class members. Garrison Decl. ¶¶ 4, 9. These reimbursable costs and

expenses were reasonably incurred in order to prosecute this case on behalf of the Rule 23 Class members and in connection with reaching the present negotiated resolution of those claims. *Id.* ¶ 9. In short, payment of these costs and expenses should be approved, just as the costs and expenses were in *Swigart*. *See Swigart*, 2014 WL 3447947, at *7 (approving $39,406.46 in costs and expenses).

### D. The Court should approve the payment of the costs of settlement administration from the common fund.

The Court preliminarily approved payment of the costs of settlement administration on May 3, 2023. Order, ¶ 10 (Doc. No. 44). RG/2 estimates that those costs will total $17,500 through the remainder of the administration of the settlement. Boub Decl. ¶ 16.

### III. CONCLUSION

For these reasons, this Court should **GRANT** Plaintiffs' Unopposed Motion for Final Approval of Rule 23 Class Action Settlement, for Payment of Attorneys' Fees, Costs, and Expenses, and for Entry of Judgment.

Date: October 16, 2023

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (TN Bar No. 24968)** *
**JOSHUA A. FRANK (TN Bar No. 33294)** *
BARRETT JOHNSTON MARTIN & GARRISON, PLLC
200 31st Avenue North
Nashville, TN 37203
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

* *Admitted Pro Hac Vice*

**ROBERT E. DEROSE (OH Bar No. 0055214)**
**BRIAN R. NOETHLICH (OH Bar No. 0086933)**
Barkan Meizlish Derose Cox, LLP
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221

13

bderose@barkanmeizlish.com
bnoethlich@barkanmeizlish.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this *Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of Rule 23 Class Action Settlement, for Payment of Attorneys' Fees, Costs, and Expenses, and for Entry of Judgment* was filed electronically with the Clerk's office by using the CM/ECF system and served on the following counsel for Defendants as listed below on October 16, 2023.

**VINCENT P. ANTAKI**
REMINGER CO., LPA
525 Vine Street, Suite 1500
Cincinnati, OH 45202
Telephone: (513) 721-1311
Facsimile: (513) 721-2553
vantaki@reminger.com
*Attorney for Defendants*

                                                /s/ David W. Garrison
                                                DAVID W. GARRISON
                                                **BARRETT JOHNSTON**
                                                      **MARTIN & GARRISON, PLLC**