## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF GARETH BENJAMIN, JOHN HARLEY, CHRISTOPHER SULLIVAN, AND AUSTIN BRADY, on behalf of themselves and all others similarly situated, | : : : : : : | Case No. 1:22-cv-166 |
| | : | Judge Timothy S. Black |
| Plaintiffs, | : : | |
| vs. | : : | |
| DJGN LLC, DJGN LEXINGTON, LLC, and DJGN INDY, LLC d/b/a TONY'S STEAKS & SEAFOOD, | : : : : | |
| Defendants. | : : | |

### ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF RULE 23 SETTLEMENT, FOR PAYMENT OF ATTORNEYS' FEES, COSTS, AND EXPENSES, AND FOR ENTRY OF FINAL JUDGMENT

This civil case is before the Court on Plaintiffs' unopposed motion for final approval of the class action settlement, for payment of attorneys' fees, costs, and expenses, and for entry of final judgment (Doc. 47).

### I.    BACKGROUND

This is a collective and class action against Defendants DJGN LLC, DJGN Lexington, LLC, and DJGN Indy, LLC d/b/a Tony's Steaks & Seafood.  Specifically, in the operative Second Amended Complaint, Plaintiffs Gareth Benjamin (Ohio),[1] Christopher Sullivan (Kentucky), and Austin Brady (Indiana) (collectively, "Named

---

[1] On June 22, 2023, the Estate of Gareth Benjamin was substituted as named plaintiff in place of Gareth Benjamin.  (Not. Order, June 22, 2023).

Plaintiffs") allege that Defendants required servers at their Ohio, Kentucky, and Indiana restaurants, who are tipped employees, to participate in a tip pooling arrangement with management and supervisory employees, in violation of both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and state wage laws. (Doc. 39).

The parties have entered into a Settlement Agreement to resolve the FLSA claims of those individuals who opted into the settlement and to resolve the state law claims on a class action basis. (Doc. 40-1). On May 3, 2023, the Court granted Plaintiffs' unopposed motion for Rule 23 class certification for settlement purposes, for preliminary approval of Rule 23 class action settlement, and for approval of the FLSA collective action settlement. (Doc. 44). Notice was sent to class members. (Doc. 48-2). And, on October 30, 2023, the Court held a fairness hearing to consider final approval of the settlement.

## II.    ANALYSIS

### A.  The FLSA Settlement is approved.

The parties' settlement agreement resolves the FLSA collective action claims of any Plaintiffs who opted into the action and any Class Member who returned a claim form. (Doc. 40-1 at Sec. 4.2.1).

The goal of the FLSA is to ensure that a covered employee receives a "fair day's pay for a fair day's work" and is "protected from the evil of overwork as well as underpay." *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). The FLSA further provides that an employer that violates the Act's requirements regarding minimum wages or overtime "shall be liable to the employee or

2

employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "The FLSA's provisions are mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." *Kritzer*, 2012 WL 1945144, at *5 (citations omitted).

FLSA claims may be compromised, however, "when a court reviews and approves a settlement agreement in a private action." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). In such circumstances, the Court must first determine that there is a *bona fide* dispute between the parties as to the employer's liability under the FLSA. *Id.*; *see also Lynn's Food Stores*, 679 F.2d at 1353 n.8. The existence of a *bona fide* dispute under the FLSA confirms that "the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Kritzer*, 2012 WL 1945144, at *5 (citations omitted).

For the FLSA claims, the Court previously approved the Settlement Agreement as to any Plaintiffs who had already opted into the action and as to those actively opting into the action by submitting a claim form. (Doc. 44 at 8). Now that claim forms have been submitted, the Court reiterates its approval of the FLSA claims for those individuals who opted into the action. Specifically, the Court finds that the parties' resolution of the FLSA claims set forth in the Settlement Agreement represent a fair and reasonable resolution of contested issues under the FLSA, including but limited to whether

3

Defendants violated the FLSA by requiring servers to share tips with management.

Accordingly, the FLSA Settlement between Defendants and opt-in Plaintiffs remains

**APPROVED**.

### B. The Settlement Classes are appropriate for Rule 23 certification.

Plaintiffs move for final certification of Rule 23 classes for their state law claims.

"The benefits of a settlement can be realized only through the final certification of

a settlement class." *Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 WL

2009681, at *4 (S.D. Ohio Apr. 30, 2018).  The Court maintains broad discretion in

deciding whether to certify a class.

Named Plaintiffs seek final certification of the following Settlement Classes:

> The Rule 23 Ohio Class
> All current and former Servers of Defendant DJGN LLC at its
> Cincinnati, Ohio restaurant who worked as a Server at any time
> from March 30, 2019 through July 1, 2022.
>
> The Rule 23 Kentucky Class
> All current and former Servers of Defendant DJGN Lexington,
> LLC at its Lexington, Kentucky restaurant who worked as a
> Server at any time from March 3, 2017 to July 1, 2022.
>
> The Rule 23 Indiana Class
> All current and former Servers of Defendant DJGN Indy, LLC
> at its Indianapolis, Indiana restaurant who worked as a Server
> at any time from April 4, 2020 to July 1, 2022.

> a.  Numerosity

Rule 23(a)(1) requires a plaintiff to demonstrate that "the class is so numerous that

joinder of all members is impracticable."  While no specific number of class members is

required to maintain a class action, "[w]hen class size reaches substantial proportions ...

4

the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). There were 79 Kentucky Class Members, 42 Ohio Class Members, and 52 Indiana Class Members identified, totaling 173 individuals across the three classes. (*E.g.*, Doc. 40-1 at 3). The Court finds that this satisfies the numerosity requirement.

    b. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Commonality does not require "the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Zehentbauer Fam. Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). Indeed, one common question of law or fact may satisfy this requirement. *Pansiera v. Home City Ice Co.*, 341 F.R.D. 223, 232 (S.D. Ohio 2022).

Here, Named Plaintiffs' and Class Members' claims all turn on common questions of law and fact. Specifically, Named Plaintiffs' and Class Members' claims raise the same common question: whether Defendants' mandatory tip-sharing with management violated applicable state laws. Accordingly, commonality is satisfied.

    c. Typicality

Rule 23(a)(3) provides that "the claims or defenses of the representative parties [shall be] typical of the claims or defenses of the class." The typicality element is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly

attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if the named plaintiff's claims are based on the same legal theory. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082.

Here, Named Plaintiffs' and Class Members' claims arise from the same conduct and are based on the same legal theory: whether Defendants violated applicable state laws by requiring servers to share tips with management. Accordingly, the typicality element is satisfied.

      d.  Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." The Sixth Circuit has counseled that there are two criteria for determining this element: (1) the representatives must have common interests with the unnamed class members, and (2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976) (citation omitted).

Here, adequacy of representation is met. Named Plaintiffs and Class Members possess the same interests and suffered the same injury: each were servers at a Tony's Steak & Seafood location who were allegedly required to share tips with management. Named Plaintiffs, with the assistance of counsel, have vigorously pursued their claims. Moreover, the classes are represented by extremely qualified counsel with extensive experience prosecuting class actions. (*See* Doc. 41-2).

      e.  Rule 23(b)

Not only must the four prerequisites of Rule 23(a) be met before a class can be certified, but "the party seeking certification must also demonstrate that it falls within at least one of the subcategories of Rule 23(b)." *In re Am. Med. Sys.*, 75 F.3d at 1079. Plaintiff argues that the class falls within Rule 23(b)(3), which states a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interest in individually controlling the prosecuting or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, common questions predominate over questions affecting only individual members. The predominating common issue shared by Named Plaintiffs and each class member is whether Named Plaintiffs and Class Members state law rights were violated when Defendants allegedly required them to share their tips with management. The

resolution of these questions does not rise or fall on the individualized conduct of a class member but on Defendants' practices.

Further, the Court finds that, given the difficulties that would be inherent in managing the Rule 23 classes, and the risk of inconsistent judgments, certification is the most efficient, and the superior, means to adjudicate the claims at issue.

Accordingly, for the foregoing reasons, the Court **GRANTS** Named Plaintiffs' request for final certification of the Rule 23 classes and certifies the Rule 23 classes.

### C. The notice program satisfied due process.

For a class certified under Rule 23(b)(3), notice must satisfy Rule 23(c)(2). To satisfy Rule 23(c)(2), notice to class members must be "practicable under the circumstances," including providing "individual notice to all members who can be identified through reasonable effort." Indeed, the ultimate objective of notice requirements is to satisfy due process. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citations omitted). "Due process does not, however, require actual notice to each party intended to be bound by the adjudication of a representative action." *Id*.

Here, the Court approved the notice procedures when preliminarily approving the settlement agreement. (Doc. 44). The notices described the terms of the Settlement, including the request for attorneys' fees and class representative award, the date of the final fairness hearing, and how to object. (Doc. 40-1 at 27-30).

On May 26, 2023, direct notice was first sent to 173 class members via First Class U.S. Mail. (Doc. 48-2 at ¶ 5-6). On July 25, 2023, a reminder notice was sent to individuals who had not yet submitted an electronic claim form. (*Id.* at ¶ 9). Forty-three (43) notice packets were returned undeliverable; however, the settlement administrator located an updated address for 37 individuals and re-sent the notice. (*Id.* at ¶ 10). After these rounds of notices, only six notice packets remained undeliverable. (*Id.*). However, of the six undelivered packets, only two individual class members did not submit a claim form. (*Id.*)

Considering the notice procedures, nearly all Class Members received notice, and the Court finds that the notice issued to class members satisfied (if not exceeded) the requirements of the federal rules and due process.

**D. The Settlement Agreement is approved.**

Final approval of the proposed settlement is warranted if the Court finds the terms of the settlement are "fair, reasonable, and adequate." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992). When deciding whether a settlement should receive final approval, the Court considers several factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia*, L.L.C., 636 F.3d 235, 244 (6th Cir. 2011) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). *See also*

Fed. R. Civ. P. 23(e)(2). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada*, 962 F.2d at 1205-06. Finally, in considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments…The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

### 1. *Risk of Fraud or Collusion*

Courts generally presume the absence of fraud or collusion unless proven otherwise. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered."); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 501 (E.D. Mich. 2008) ("Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion.").

Here, the settlement was the result of arm's-length negotiations conducted by experienced counsel for both parties and in front of an experienced mediator. (*E.g.*, Doc. 41-2 at ¶ 15). Accordingly, the Court concludes that the settlement was reached in good faith and does not present the risk of fraud or collusion.

### 2. *Complexity, Expense, and Duration of the Litigation*

"Generally speaking, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re*

*Telectronics*, 137 F. Supp. 2d at 1013 (quotation omitted).  Although the specific facts underlying this action may not have been complex—all Class Members were servers at Tony's restaurants who were allegedly required to share tips with management—there would likely be dispute over the application of those facts—Defendants' liability under state laws, and any damages resulting therefrom.  Without settlement, the parties would likely expend significant time and money litigating this case through class certification, dispositive motions, trial, and appeal.  Additionally, proceeding as a class is an efficient resolution of 173 potential actions for both the parties and the court system.  Thus, this factor weighs in favor of approval.

### 3. *Amount of discovery*

The parties exchanged a large amount of documents and information throughout the litigation.  Importantly, Defendants produced payroll and timekeeping data for Class Members, which data was reviewed by an expert for Plaintiffs.  (Doc. 41-2 at ¶ 17). Thus, the Court concludes that the discovery conducted in this case was sufficient.

### 4. *Likelihood of Success on the Merits*

The settlement provides relief to 173 class members.  Although Plaintiffs believe that they would ultimately prevail on the issues, there is an inherent risk of litigation and trial.  Moreover, there is an inherent risk that Class Members would face inconsistent judgments if they were to proceed on a case-by-case basis.  By agreeing to the settlement, risks are eliminated, and Class Members are guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever).  This factor weighs in favor of approval.

### 5. *Opinion of Counsel & Representatives*

The Class Representatives approve the settlement. (Doc. 41-3 at ¶ 8; Doc. 41-4 at ¶ 10; Doc. 41-5 at ¶ 10). Class Counsel also believes the settlement is fair, reasonable, and adequate. (Doc. 41-2 at ¶ 18). Further, the competency and experience of Class Counsel is not in dispute. This factor weighs in favor of approval.

### 6. *Reaction of Absent Class Members*

The reaction of absent class members strongly supports approving the settlement. Of the 173 Class Members, no class member rejected, objected, or excluded themselves from the settlement. Moreover, 131 of the 173 Rule 23 class members have returned claims forms, claiming approximately 88% of the estimated net settlement funds. (Doc. 44 at ¶¶ 14-15). Accordingly, this factor weighs heavily in favor of approval.

### 7. *Public interest*

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada*, 962 F.2d at 1205); *see also In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 19, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."). This case is no exception, and this factor weighs in favor of approval.

Accordingly, considering the foregoing, all factors weigh in favor of approving the settlement. The Court finds that the settlement is fair, reasonable, and adequate. The settlement is approved.

**E. Plaintiffs' and Class Counsel are entitled to their requested fee.**

Plaintiffs' and Class Counsel (collectively, "Counsel") requests an order approving $500,000 in attorneys' fees.

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six *Ramey* factors. *Id.* (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

### 1. *The Court Adopts the Percentage Approach.*

In the Sixth Circuit, district courts have the discretion to determine the appropriate method for calculating attorneys' fees considering the unique characteristics of class actions in general, as well as the particular circumstances of the actual cases pending before the Court, using either the percentage or lodestar approach. *Id.* at 761. Here, the Court uses the percentage approach given the common fund nature of the settlement.

Moreover, the Court finds that Counsel's request for one-third of the common fund to be reasonable; it is well within the range of fees typically approved by Courts in

the Sixth Circuit. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380-81 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *In re Telectronics*, 137 F. Supp. 2d at 1029 ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund").

### 2. Ramey *Factors*

In reviewing the reasonableness of the requested fee award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1196. After review, the Court concludes that all factors weigh in favor of the reasonableness of the fee award.

### a. Value of the benefits

Counsel's work resulted in a benefit of $1,500,000 to the class. The benefit provides significant tangible relief to Class Members now and eliminates the risk, the uncertainty, and the inconsistent judgments parties would otherwise incur if this litigation were to continue. Moreover, Class Members seem to recognize the value of the benefits. Discovery revealed 173 Class Members. After notice was sent, no Class Member opted-

out or objected to the settlement. And 131 Class Members have returned claims forms, claiming 88% of the estimated net settlement funds. (Doc. 44 at ¶¶ 14-15).

### b. Society's stake

There is a benefit to society in ensuring that small claimants may pool their claims and resources, and attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2:15-cv-1066, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017) (citation omitted). Here, Counsel's efforts resulted in a tangible reward for Class Members. Many Class Members would not have been able or willing to pursue their claims individually, and many would likely not even be aware that they had a claim against Defendants. *Id.* Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted).

### c. Contingent Fee Services

Despite the risks associated with prosecuting this case, Counsel litigated this matter on a wholly contingent basis with no guarantee of recovery. (Doc. 48-1 at ¶ 10).

### d. Lodestar Cross-Check

Conducting a lodestar cross-check is optional; however, the lodestar method also supports Counsel's fee request. Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (citation omitted). The Court then has the discretion to enhance the lodestar with a separate multiplier that can serve to account for the risk an attorney assumes in undertaking a case,

the quality of the attorney's work product, and the public benefit achieved.  *Id.* at 279, 280.

Here, up to October 10, 2023, Counsel expended over 700 total hours on this case which, at their customary billing rates, provided a cumulative lodestar of $303,251.50, more than the requested fee.[2]  (Doc. 48-1 at ¶¶ 4-8).  The lodestar results in a multiplier of 1.65, which well within the range of multipliers for cases such as this.  *E.g.*, *Dillow v. Home Care Network, Inc.*, No. 1:16-CV-612, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (approving 2.9 multiplier) (collecting cases).  Thus, the lodestar cross-check supports the requested fee award.

### e.  Complexity of the Litigation

As already discussed, the litigation was complex, and resolving the merits of litigation through dispositive motions, trial, or appeal would have been risky, costly, and time consuming.  *See* Sec. D(2), *supra*.

### f.  Skill of Counsel

Finally, the Classes and Defendants are represented by highly experienced counsel.  There is no dispute that all counsel are highly qualified and have substantial experience in federal courts and class action litigation.

Accordingly, considering all the factors, the Court determines the fees requested are reasonable, and **GRANTS** Counsel's request for fees in the amount of $500,000.

---

[2] The motion requesting attorneys' fees did not mention how many hours Counsel expended in the litigation up to the date of filing their motion.  (*See* Doc. 47).  However, at the fairness hearing, Counsel represented to the Court that Counsel expended over 700 hours, which the Court finds sufficient to review the lodestar cross-check.

**F.  Counsel is entitled to reimbursement of expenses.**

Under the common fund doctrine, Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement.  *See In re Cardizem*, 218 F.R.D. at 535.  Expense awards are customary when litigants have created a common settlement fund for the benefit of a class.  *Id.* (quotation omitted).

Here, Counsel requests $25,142.42 in litigation expenses.  Counsel avers that these were reasonably incurred to advance the claims in this case.  (Doc. 48-1 at ¶ 9).  Upon review, all of Counsel's expenses were reasonable and necessary in connection with litigating and resolving this case and are therefore reimbursable.  Moreover, absent Class Members and Defendants do not dispute that the fees are reasonable and reimbursable.

Accordingly, the Court **GRANTS** Counsel's request for $25,142.42 in expenses.

**G. The Court approves the administrative and notice expenses.**

The settlement agreement contemplates that settlement administrative fees will be disbursed from the common fund.  (*E.g.*, Doc. 40-1 at 4, Sec. 2.15).  Counsel now requests that the Court approve payment of settlement administration costs from the common fund.  (Doc. 48 at 13).  The settlement administrator estimates that the total costs to administer the settlement will be $17,500.  (Doc. 48-2 at ¶ 16).  The Court finds these costs reasonable and necessary to administer the settlement and **APPROVES** payment of settlement administration costs from the common fund.

**H. Named Plaintiffs are entitled to a service award.**

Finally, Named Plaintiffs requests that the Court approve a $15,000 service award to the three Named Plaintiffs. "Courts typically authorize contribution (or 'incentive' awards) to class representatives for their often extensive involvement with a lawsuit." *Rikos*, 2018 WL 2009681, at *10. "Such compensation to named plaintiffs is typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *Id*.

Here, Named Plaintiffs stayed informed throughout the litigation. (Doc. 41-2; Doc. 41-3; Doc. 41-4; Doc. 41-5). Moreover, no class member objected to the potential for a $15,000 service award for each Named Plaintiff. Accordingly, the Court **GRANTS** Named Plaintiffs' request for a service award of $15,000 each.

### III.    CONCLUSION

Based upon the foregoing, Plaintiffs' unopposed motion for final approval of Rule 23 class action settlement, for payment of attorneys' fees, costs, and expenses, and for entry of judgment (Doc. 47) is **GRANTED**. Accordingly:

1.      Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes, the Court certifies the following Settlement Classes:

> **The Rule 23 Ohio Class**
> All current and former Servers of Defendant DJGN LLC at its Cincinnati, Ohio restaurant who worked as a Server at any time from March 30, 2019 through July 1, 2022.

**The Rule 23 Kentucky Class**
All current and former Servers of Defendant DJGN Lexington, LLC at its Lexington, Kentucky restaurant who worked as a Server at any time from March 3, 2017 to July 1, 2022.

**The Rule 23 Indiana Class**
All current and former Servers of Defendant DJGN Indy, LLC at its Indianapolis, Indiana restaurant who worked as a Server at any time from April 4, 2020 to July 1, 2022.

2.     Pursuant to Fed. R. Civ. P. 23(c)(3), all such persons who satisfy the Settlement Classes definitions above are members of the Settlement Class. Because no member of the Settlement Classes opted out of the Settlement, all Settlement Class Members are bound by this Final Approval Order.

3.     The Court grants final approval to its appointment of the Estate of Benjamin Gareth as Class Representative for the Rule 23 Ohio Class; Christopher Sullivan as Class Representative for the Rule 23 Kentucky Class; and Austin Brady as Class Representative for the Rule 23 Indiana Class. The Court finds that each Class Representative is similarly situated to absent Class Members, is typical of the Class, and is an adequate Class Representative, and that Class Counsel and the Class Representative have fairly and adequately represented the Class.

4.     The Court grants final approval to its appointment of Class Counsel, appointing David W. Garrison and Joshua A. Frank of Barrett Johnston Martin & Garrison, PLLC. Class Counsel have extensive experience handling class action cases and have thoroughly represented the Class Members' interests in this case.

5.     The Court's Preliminary Approval Order approved the notice procedures to the Rule 23 Classes and found the distribution and publishing of the various notices as

proposed met the requirements of Fed. R. Civ. P. 23 and due process, and was the best

notice practicable under the circumstances, constituting due and sufficient notice to all

persons entitled to notice. The Court finds that the distribution of the Notices has been

achieved pursuant to the Preliminary Approval Order and the Settlement Agreement, and

that the Notice to Class Members complied with Fed. R. Civ. P. 23, due process, and any

other applicable law.

6.      Pursuant to Fed. R. Civ. P. 23(e)(2), the Court finds that the Settlement

Agreement (Doc. 40-1) is fair, reasonable, and adequate, as expressed further herein. The

Court also finds the Settlement Agreement was entered into in good faith, at arm's length,

and without collusion.

7.      The Court **APPROVES** the distribution and allocation of the settlement

fund pursuant to the Settlement Agreement.

8.      The Court **AWARDS** Class Counsel $500,000 in attorneys' fees, which is

1/3 of the $1,500,000 settlement fund, and reimbursement of expenses of $25,142.42 to

be paid according to the terms of the Settlement Agreement. These amounts of fees and

expenses are fair and reasonable.

9.      The Court **AWARDS** the Class Representatives, the Estate of Gareth

Benjamin, Christopher Sullivan, and Austin Brady, $15,000 each to be paid according to

the terms of the Settlement Agreement. The award is justified based on their service to

the Classes.

10.     Nothing in the Settlement Agreement, the Final Approval Order, Judgment,

or the fact of the settlement constitutes any admission by any of the parties of any

liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the action.

11.     The Court **DISMISSES WITH PREJUDICE** all claims of the Rule 23 Settlement Class Members against Defendants in this action, without costs and fees except as explicitly provided for in the Settlement Agreement. Specifically, the Rule 23 Class Members' state law claims against Defendants pertaining to Defendants' alleged tip sharing violations are **DISMISSED with prejudice**. Additionally, any FLSA claims arising from the same alleged conduct of Class Members who submitted a Claim Form (*i.e.*, opted into the settlement) are **DISSSMISSED with prejudice**.

12.     Without affecting the finality of the Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of the Judgment and the Settlement Agreement, and all matters ancillary thereto.

13.     The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date:    11/13/2023                                      *s/Timothy S. Black*
                                                        Timothy S. Black
                                                        United States District Judge